IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 26, 2007

**STATE OF TENNESSEE v. JAMES VANOVER**
**Appeal from the Criminal Court for Knox County**
**No. 75139   Mary Beth Leibowitz, Judge**

**No. E2006-01342-CCA-R3-CD - Filed August 15, 2007**

Following a jury trial in Knox County Criminal Court, the defendant was convicted of rape of a child, a Class A felony, and two counts of aggravated sexual battery, a Class B felony, and sentenced to twenty years in prison on the rape of a child conviction and eight years in prison on each aggravated sexual battery conviction. The court ordered the sentences to run consecutively, resulting in an effective sentence of thirty-six years. On appeal, we affirmed the convictions but remanded the case to the trial court for resentencing because the trial court failed to make appropriate findings concerning consecutive sentencing. State v. James Vanover, No. E 2005-01192-CCA-R3-CD, 2005 WL 521496, at *5-*6 (Tenn. Crim. App. Mar. 2, 2006). The second sentencing hearing was held in June 2006, at which the trial court again imposed consecutive sentences. The defendant appeals, alleging that the trial court improperly applied consecutive sentences. After reviewing the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court**
**Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and THOMAS T. WOODALL, J., joined.

Leslie M. Jeffress, Knoxville, Tennessee, for the appellant, James Vanover.

Robert E. Cooper, Jr., Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Randall E. Nichols, District Attorney General; Kevin Allen, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The relevant facts of this case were summarized by this court in the defendant's initial appeal as follows:

[The victim's aunt, Teresa] Wakefield testified that in October 2001, she noticed a change in the victim's behavior. She said the victim was not as happy, "and she would just hang her head down like she [was] worried about something." She said that she asked the victim if anything was wrong and that the victim began crying. She said the victim told her what was wrong.

Ms. Wakefield said she was present the following day at the hospital. She said she stayed in the room with the victim while the doctor examined her vagina. She said the victim was very upset and scared.

. . . .

The victim testified that she was twelve years old. She said that she called the defendant "dad" when he lived with her but that most people called him "Bug." The victim said the defendant began touching her "private parts" when she was six years old. She said he would normally rub her vagina. She said that on many occasions, the defendant would "either put his hand down there under my clothes or take my hand and put it under his clothes." She said the defendant made her touch his penis.

The victim testified that on one occasion, she was sitting on top of the defendant in her nightclothes when he "unbuttoned his pants, and he put his penis into my vagina halfway but not all the way, because I got off of him, and I said I had to go use the bathroom. . . ." She said that after her brother moved away from home, the abuse got worse because she was left alone more often with the defendant. She said that she did not know how many times the defendant touched her but that it was quite a few times. She said she thought she touched the defendant more times than he touched her.

The victim testified that on another occasion the defendant came into the bathroom while she was taking a shower, pulled back the shower curtain, and said, "Let me see you." She said she could not remember if her mother was home but thought she was in the living room. She said that later that night, the defendant told her if she refused to get on top of him underneath the covers, he would kill her mother. She said the defendant stuck his penis in her vagina, but again only halfway. She said he stopped because her mother was coming into the adjacent room. She said the defendant's raping her hurt. She said she did not tell her mother because she was afraid the defendant would kill her mother. She said she told her aunt what happened a few weeks later because she did not want it to happen again.

The victim testified that she specifically remembered touching the defendant's penis while in his camper, which was parked outside their house. She

said she specifically remembered the defendant touching her vagina in his camper just before her mother walked in with some pillows. The victim said she never told anyone about the defendant's touching or raping her because she was afraid he would hurt her or her family. The victim said she was not mad at the defendant for any other reason.

. . . .

Dr. Jerrod Michael Connors, a pediatric emergency physician at East Tennessee Children's Hospital, testified that he examined the victim.[1] He said that during his examination, the victim told him that her stepdad had touched her in her private area.

. . . .

Dr. Connors said he found the victim's hymen to be abnormal due to an opening in the hymen. He said, however, that subsequent medical literature suggested that the opening was not necessarily indicative that a penis or a tampon had pierced the hymen. Dr. Connors testified that he could not be certain whether the victim's hymen had been pierced. On cross-examination, Dr. Connors admitted that it was very hard to prove that a sexual penetration did not occur. He said that when a sexual penetration would occur, the results of a medical exam would normally be inconclusive.

The defendant testified that when he first met the victim, she was a baby. He said he thought of the victim as a daughter based upon his relationship with the victim's mother. He said that he never touched the victim inappropriately, that he never asked the victim to touch him inappropriately, and that he never raped her. The defendant said he did not know why the victim was making false allegations against him and denied ever threatening the victim or her family.

James Vanover, 2006 WL 521496, at *1-*3. In her victim impact statement, the victim stated that as a result of her ordeal, she was afraid of men, did not want to go outside, continued to have nightmares, and had seen a counselor.

This court affirmed the defendant's convictions but held that the trial court improperly imposed consecutive sentences based on the improper application of a sentence enhancement factor to justify a consecutive sentence, as well as the failure of the trial court to "specifically recite the reasons" for its imposition of consecutive sentences, as is required under Rule 32(c)(1) of the Tennessee Rules of Criminal Procedure. Id. at *6. At the resentencing hearing, the trial court stated:

---

[1] According to hospital records, the victim was nine years old at the time of the examination.

. . . there was significant mental impact [on the child victim]. We had a considerable body of testimony as well as the presentence report which talked about that. And there was a considerable period of time during which all of this took place. And because of the extensive pattern of behavior in this case the Court feels that 40-35-115(b) does apply. . . . And I think [imposing consecutive sentences] is appropriate under resentencing based upon—based upon that statute because of the special relationship between [the defendant] and his step-child and the manner and nature and scope of these acts which took place in, basically some of them by luring the child and doing other things that I think are inappropriate.

## ANALYSIS

On appeal, the defendant claims that his sentences were excessive and that the trial court improperly imposed consecutive sentences. We disagree.

An appellate court's review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d) (2003).[2] As the Sentencing Commission Comments to this section note, on appeal the burden is on the defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, the court may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

Consecutive sentencing is guided by Tennessee Code Annotated section 40-35-115(b), which states in pertinent part that the trial court may order sentences to run consecutively if it finds by a preponderance of the evidence that

[t]he defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims[.]

---

[2] We note that on June 7, 2005, the General Assembly amended Tennessee Code Annotated sections 40-35-102(6), -114, -210, -401. See 2005 Tenn. Pub. Acts ch. 353, §§ 1, 5, 6, 8. However, the amended code sections are inapplicable to the defendant's appeal because the defendant's offenses occurred before the new law was enacted, and he did not elect to be sentenced under the new law.

Tenn. Code Ann. § 40-35-115(5) (2003). As stated above, the trial court is required to "specifically recite the reasons" behind imposition of a consecutive sentence. See Tenn. R. Crim. P. 32(c)(1); see, e.g., State v. Palmer, 10 S.W.3d 638, 647-48 (Tenn. Crim. App. 1999) (noting the requirements of Rule 32(c)(1) for purposes of consecutive sentencing). Furthermore, our courts have consistently held that the sentencing principles announced by the Supreme Court in Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004), and related cases do not impact consecutive sentencing. See State v. Robinson, 146 S.W.3d 469, 499 n.14 (Tenn. 2004); State v. Donald Luke Seiber, No. E2006-00816-CCA-R3-CD, 2007 WL 1649626, at *7 (Tenn. Crim. App. June 7, 2007); State v. William Shane Bright, No. E2006-01906-CCA-R3-CD, 2007 WL 1259177, at *2 n.1 (Tenn. Crim. App. Apr. 30, 2007).

At the resentencing hearing, the trial court specifically noted the significant mental damage suffered by the victim, who had known the defendant since birth and who considered the defendant to be her "dad." The trial court also noted that the abuse took place over a "considerable period of time," beginning when the child was six years old and ending when she was nine years old. The trial court also noted the "manner and scope" of the defendant's acts, evidence of which are thoroughly exhibited by the record. In short, the trial court upon resentencing met the requirements for imposing consecutive sentences when a defendant is convicted of multiple offenses involving sexual abuse of a minor. Therefore, we affirm the sentences imposed by the trial court.

CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

D. KELLY THOMAS, JR., JUDGE